UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MELISSA YANKE,

    Plaintiff,

  v.                                        Case No. 20-CV-1055

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

---

## DECISION AND ORDER

Melissa Yanke seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On October 31, 2017, Yanke filed an application for a period of disability and disability insurance benefits alleging disability beginning on May 1, 2017 due to bone spurs on the spine, diabetes, glaucoma, and depression. (Tr. 227.) Yanke's application was denied initially and upon reconsideration. (Tr. 13.) Yanke filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on May 15, 2019 (Tr. 41–93.) Yanke testified at the hearing, as did Teresa McClain, a vocational expert. (Tr. 41.)

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

In a written decision issued August 9, 2019, the ALJ found that Yanke had the severe impairments of degenerative disc disease of the thoracic and lumbar spine with facet arthropathy at L4-5 and sacroiliac arthritis and mild lumbar radiculopathy and neuropathy to the right lower extremity, mild right hip degenerative joint disease with possible acetabular lateral tear, obesity, anxiety, and depression. (Tr. 15.) The ALJ found that Yanke did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 18–20.)

The ALJ further found that Yanke had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: She requires the option to alternate positions at the work station between sitting and standing as often as every 30 minutes for approximately 5-10 minutes, but will not need to leave the work station or otherwise be off-task from work performance as a result. She can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. She can frequently reach side to side and to the front but only occasionally reach overhead with the bilateral upper extremities. She must avoid more than occasional exposure to extremes of cold, heat, wetness, humidity, or workplace hazards (including moving machinery and unprotected heights). (Tr. 20.)

As to her mental impairments, Yanke was limited to understanding, remembering, or carrying out only simple instructions and routine tasks in a work environment with few changes in work duties. She was limited to a work environment with no fast paced production quota or rate (any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota rather than assembly line work or other similar work). (*Id.*)

While the ALJ found that Yanke could not perform her past relevant work as a credit clerk and CSR clerk/cashier II, the ALJ found that given her age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 32–33.) Specifically, the ALJ accepted, over Yanke's objections, the VE's testimony that she could perform the duties of document preparer (with 46,646 jobs available) and addresser (with 5,695 jobs available). (Tr. 33–34, 85.) As such, the ALJ found that Yanke was not disabled from May 1, 2017, through the date of the decision. (Tr. 34.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Yanke's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does

not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2. *Application to This Case*

Yanke argues the ALJ committed three reversible errors: (1) failing to account for Yanke's moderate limitations in concentration, persistence, or pace; (2) failing to properly assess her allegations of disabling symptoms pursuant to SSR 16-3p; and (3) failing to address the reliability of the VE's testimony. (Docket # 16.)

I agree that remand is required based on the ALJ's reliance on the VE's faulty testimony; thus, I will not address Yanke's additional arguments at length. However, it is worth briefly addressing Yanke's arguments regarding the ALJ's failure to include limitations for concentration, persistence, or pace and for failing to properly assess her allegations of disabling symptoms, as these arguments are frequently raised by plaintiffs. In cases such as Yanke's, with a record spanning over 2,000 pages and a 21-page ALJ decision, "nit-picking" the ALJ's decision for errors becomes much easier. Plaintiffs should take care, however, to carefully consider the validity of the arguments they raise before proffering them. In this case, the ALJ found Yanke had no more than moderate limitations in concentration, persistence, or pace (Tr. 19), although Yanke acknowledges that her alleged limitations are based on difficulties concentrating, not with persistence or pace (Docket # 16 at 10–13). The crux of Yanke's argument is not that she actually *needs* any specific accommodation for her alleged

4

deficits in concentration, but that the ALJ should have assigned *some* limitation addressing her concentration. (Pl.'s Reply Br. at 2, Docket # 23.)

Interestingly, in this case, on the reconsideration level, State Agency psychiatrist Dr. Joseph Cools found Yanke's mental impairments non-severe, posing no more than minor limitations to her overall functional ability. (Tr. 118.) In the ALJ's opinion, he cites ample evidence that would support this finding, such as lack of treatment, normal mental status exams, and improvement with medication. (Tr. 25–28.) Despite the lack of evidence supporting more than a mild limitation in concentration, persistence, or pace, the ALJ clearly gave Yanke the benefit of the doubt in finding moderate limitations. Yanke argues, however, that the RFC is devoid of any limitation for concentration. (Docket # 23 at 2.) This is simply inaccurate. Limitations to understanding, remembering, or carrying out only simple instructions and routine tasks in a work environment *are* accommodations for deficiencies in concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Start with concentration. The second ALJ found that '[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions.'")

In her reply brief, Yanke suggests several accommodations that the ALJ could have given to someone with moderate limitations in concentration (such as time off-task or a distraction-free work environment, *see* Docket # 23 at 2); however, she points to no evidence in the record that Yanke herself needs any of those specific limitations. Given the scant evidence supporting more than a mild limitation in concentration, the ALJ's generous finding, though short on explanation, is harmless error at best as it overstates her needed limitations for concentration.

5

Further, regarding Yanke's argument that the ALJ erred in considering her subjective symptoms, she nit-picks the decision without explaining how these alleged errors change the outcome of the case. For example, Yanke faults the ALJ for incorrectly finding inconsistencies in Yanke's statements because she reported in May 2017 that she could sit for 60 minutes but a month later said she could only sit for 15-20 minutes. (Docket # 16 at 18, citing Tr. 29.) Yanke points out that the later report was actually three months later (in August 2017) and that there was a worsening of her condition that explained the alleged inconsistency. (*Id.*) Given, however, Yanke's extremely limited RFC, it is unclear how this error, or the others Yanke articulates, (*see* Docket # 16 at 13–23), effects the outcome. Furthermore, "[a]n ALJ's assessment of a claimant's subjective complaints will be reversed only if 'patently wrong.'" *Cheryl W. v. Kijakazi*, No. 19 C 4904, 2021 WL 3709193, at *5 (N.D. Ill. Aug. 20, 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). Yanke has failed to demonstrate this.

Remand is required, however, because the ALJ relied on faulty VE testimony to determine the availability of jobs Yanke could perform in the national economy. As stated above, the VE testified that a person with Yanke's RFC could perform the jobs of document preparer, DOT 249.587-018 and addresser, DOT 209.587-010. (Tr. 85.) The Dictionary of Occupational Titles ("DOT") defines document preparer as follows:

> DOCUMENT PREPARER, MICROFILMING (business ser.)
>
> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA

6

> OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

Dictionary of Occupational Titles, *available at* https://occupationalinfo.org/. The DOT defines addresser as follows:

> **ADDRESSER (clerical) alternate titles: addressing clerk; envelope addresser**
>
> Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail.

*Id.* Although the DOT is still frequently used and there is no Seventh Circuit precedent finding that reliance on it is *per se* error, it is readily accepted that the DOT, last updated in 1991 and generally containing information describing jobs as they existed in 1977, is outdated, if not downright obsolete. *See Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). As the Seventh Circuit noted in *Browning*, "[n]o doubt many of the jobs have changed and some have disappeared. We have no idea how vocational experts and administrative law judges deal with this problem." *Id.* And the two jobs the VE cited in this case—Document Preparer, Microfilming and Addressor—are particularly problematic. At least one court in this district found that while microfilming "might not be completely obsolete, it seems fair to suspect it has changed dramatically since 1977 or even 1991 'given the shift to digital storage and advances in scanning technology.'" *Gulley v. Berryhill*, No. 17-CV-1782, 2019 WL 668836, at *4 (E.D. Wis. Feb. 19, 2019) (quoting *Dearth v. Berryhill*, No. 2:16-CV-487-JEM, 2018 WL 1225045, at *4, 2018 U.S. Dist. LEXIS 38847 at *11 (N.D. Ind. Mar. 9, 2018)). The court found that "[a]t a minimum, the notion that nearly 100,000 such jobs exist nationally strains credulity." *Id.*; *see also Dearth v. Berryhill*, No. 2:16-CV-487-JEM, 2018 WL 1225045, at *4

7

(N.D. Ind. Mar. 9, 2018) ("The job of preparing documents for microfilm preservation is one that seems particularly likely to have changed in the last 37 years given the shift to digital storage and advances in scanning technology."); *Kordeck v. Colvin*, No. 2:14-CV-431-JEM, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (stating that the job of microfilm document preparer, DOT 249.587-018, is an example of a job that has been "reduced significantly in number if not rendered obsolete by the rise of the internet").

Furthermore, the job of "addresser" is even more resoundingly obsolete. *See, e.g., Hardine v. Comm'r of Soc. Sec.*, No. 4:19-CV-147-DAS, 2021 WL 1098483, at *1 (N.D. Miss. Feb. 26, 2021) (finding that "the job of 'addresser' is obsolete, and this court will not consider it in its calculations in the future"); *Jason Robert F. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-00201-BR, 2021 WL 1010946, at *8 (D. Or. Mar. 16, 2021) (concluding that "the job of Addresser is obsolete, and, therefore, the ALJ erred at Step Five when she found that job exists in significant numbers in the national economy"); *Analia D. v. Berryhill*, No. CV 18-3689 MRW, 2019 WL 856854, at *2 (C.D. Cal. Feb. 6, 2019) ("Substantial evidence and common sense do not – and reasonably could not – support the agency's conclusion that thousands of people work every day typing envelopes for a living."). Even a 2011 Social Security Administration medical-vocational claims review found the job of "addresser" to be obsolete. *See N.B. v. Saul*, No. 20-CV-01138-LB, 2021 WL 1947526, at *11 (N.D. Cal. May 14, 2021).

In *Gulley*, the court reasonably concluded that because "the DOT is so extremely outdated, the court finds that an ALJ errs if he uncritically accepts the job numbers proffered by the vocational expert without attempting to determine whether the numbers are still current when common sense suggests that they may not be." 2019 WL 668836, at *4. In this case, that is not exactly what happened. Yanke's counsel did challenge the obsolete nature of

8

Case 2:20-cv-01055-NJ   Filed 09/28/21   Page 8 of 10   Document 24

document preparer and addresser and the VE did make an attempt to reconcile the jobs as described in the DOT with reality. The VE's testimony, however, was less than satisfactory. Counsel questioned the fact that the job of document preparer, as defined in the DOT, related to microfilm preparation. (Tr. 89.) The VE responded by testifying: "Okay. It does, but in the let's say the national economy, other vocational experts view it as a person who does scanning. There's similar characteristics to that. So, it's like a person who does scanning." (*Id.*) When pressed further on what both the VE and "other vocational experts" based their opinion on, the VE testified:

> Okay. I'm gray in that job description . . . Well, the person is - - when they prepare the documents, they - - a scanner is in a way like a copier that they put the document there and then they have to - - the document, you know, gets scanned and then they move the document out of there. So, that's similar in that. That's the main thing. In term of the - - they're reproducing the document and then, you know, it's whereas that's what a microfilm person did also.

(Tr. 90.) Regarding the addresser job, the VE agreed that the job likely has changed substantially in over 40 years, but stated that "it also includes other tasks like sorting mail or other like clerical tasks." (Tr. 92.) When asked how she obtained the number of available jobs, the VE stated that she "read off the information from the job description that [she] thought applied" and then used the Job Browser Pro software. (Tr. 91.)

Thus, the VE did acknowledge the outdated nature of those two jobs, and attempted to somehow modernize the definition to include tasks not included in the DOT definitions. The problem, however, is that the precise job that the VE relied on in determining job numbers from the Job Browser Pro software is unclear. Is the document preparer really a scanner? And what does that job involve? And what "other clerical tasks" beyond sorting mail does "addresser" include? Whether the ALJ relied on the numbers for those two completely outdated jobs, or on the VE's attempt to modernize the jobs with an amorphous description,

9

the ALJ's determination that the "estimation offered by the vocational expert in this case is sufficiently reliable and probative to support a finding that there are a significant number of jobs in this case" (Tr. 34), is not supported by substantial evidence. For this reason, remand is required.

## CONCLUSION

Yanke argues that the ALJ erred in finding that she was not disabled under the Social Security regulations. I find that the ALJ's decision was not supported by substantial evidence and thus remand is required. Thus, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2021.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge